# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BOBBI STEELE-MALOCU            :

      Plaintiff,            :

             Case No. 3:09cv383

vs.                            :

             District Judge Timothy S. Black

MICHAEL J. ASTRUE,            :     Magistrate Judge Sharon L. Ovington
    Commissioner of the Social
    Security Administration,      :

      Defendant.            :

## REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

Following an industrial injury, Plaintiff Bobbi Steele-Malocu sought

financial assistance from the Social Security Administration by applying for

Supplemental Security Income ["SSI"] and Disability Insurance Benefits ["DIB"],

with a protective filing date of September 27, 2005.  (Tr. 96-98, 453-56).   Plaintiff

alleges disability since September 6, 2003, due to lower back and shoulder pain,

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

1

fibromyalgia, osteoarthritis, irritable bowel syndrome, urinary incontinence, and bilateral carpal tunnel syndrome.  (Tr. 106, 122, 467-505).

After various administrative proceedings, Administrative Law Judge ["ALJ"] Robert M. Senander denied Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff's impairment did not constitute a "disability" within the meaning of the Social Security Act.  (Tr. 16-22).  The ALJ's nondisability determination and the resulting denial of benefits became the final decision of the Social Security Administration when the Appeals Council denied Plaintiff's request for review.  (Tr. 8-10).  Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

The case is before the Court on Plaintiff's Statements of Errors (Doc. # 8), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks a reversal or remand to the hearing level to correct certain claimed errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

Plaintiff was 38 years old at the time of the administrative decision, and thus was considered to be a "younger individual" for purposes of resolving her

2

DIB and SSI claims.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c);[2] (*see also* Tr. 24, 114).
She has a high school education and completed two years of college.  *See* 20
C.F.R. § 416.964(b)(4); (*see also* Tr. 21).  Plaintiff has worked in the past as a
security/baggage handler, injection mold machine tender, and service associate.
(Tr. 499).

Plaintiff testified at the administrative hearing on December 15, 2008, that
she has suffered chronic pain since an injury suffered while working for TSA [the
Transportation Security Administration].  (Tr. 465-66).  Plaintiff testified to
continuing limitations alleged to result from her lower back and shoulder pain,
fibromyalgia, osteoarthritis, irritable bowel syndrome, urinary incontinence, and
bilateral carpal tunnel syndrome.  (Tr. 467-505).

Plaintiff reported her back pain to be a 10 on a zero to 10 pain scale.  (Tr.
470).  She also testified that she took pain medication, but had to stop due to
switching insurance and the resulting cost.  (Tr. 471).  She was on Ultram and
Norflex.  (Tr. 473).  Plaintiff stated that she could not lift much weight, but tried
to lift a half gallon of milk.  (Tr. 475).  She believed that she could stand for 10 to
15 minutes and sit for five minutes. (Tr. 476).  Plaintiff further testified that she
had difficulty sleeping due to pain, waking every one to two hours.  (Tr. 477).

---

[2]The remaining citations will identify the pertinent SSI Regulations with full knowledge
of the corresponding SSI/DIB Regulations.

Plaintiff testified that she experiences pain and weakness in her hands, drops things, and uses a seat in her shower. (Tr. 480). Her daughter and husband help her with household chores. (Tr. 479). During a typical day, she keeps her 4-year-old child company and prepares meals such as soup and cereal. (Tr. 479-80).

Plaintiff testified that irritable bowel syndrome requires her to use the restroom approximately 10 times per day, and she needs to bring a change of clothes with her when she goes places due to accidents. (Tr. 481).

**Medical Evidence.**  The relevant medical evidence of record is summarized as follows:

Plaintiff was injured at work as an airline screener/baggage checker on September 6, 2003, while lifting suitcases that weighed over 70 pounds. She was one month pregnant at the time of the injury. Due to her pregnancy, no immediate diagnostic testing other than an sonogram was performed. (Tr. 407). Plaintiff delivered a full-term baby in April 2004. (Tr. 134).

An MRI of Plaintiff's lumbar spine taken on June 23, 2004, was negative. (Tr. 137). In January 2005, Plaintiff's family physician, Edward Kinkopf, D.O., diagnosed her with a lumbosacral strain/sprain, and referred her to an orthopedic surgeon, Aivars Vitols, D.O. (Tr. 172).

4

Dr. Vitols. saw Plaintiff on January 24, 2005.  (Tr. 134-36).  Plaintiff denied bladder or bowel changes.  (Tr. 135).  She had a normal gait and could walk heel to toe.  (*Id*.).  Plaintiff complained of pain on palpation over her sacroiliac ["SI"] joints, and some pain on palpation at the midline of L4-5.  (*Id*.).  Her dorsolumbar paravertebral musculature revealed moderate myospasm to palpation.  (*Id*.). Bilateral hip, ankle and knee motion and bilateral straight leg raising were normal.  (*Id*.).  Reflexes in the lower extremities were normal.  (*Id*.).  Dr. Vitols diagnosed sacroiliac sprain and strain, right and left.  (Tr. 136).  He believed that Plaintiff's symptoms originated from both SI joints.  (*Id*.).  He recommended therapy and a TENS unit, as well as consideration of bilateral SI joint blocks. (*Id*.).

Dr. Vitols saw Plaintiff again on April 21, 2005, to evaluate her complaints of left shoulder pain.  (Tr. 130-31).  Examination revealed no obvious deformity of the shoulder, no deltoid flattening, and no isolated AC joint pain.  (Tr. 130). Plaintiff did evidence painfully restricted motion of the shoulder with lateral referred pain.  (*Id*.).  Abduction at 4/5 indicated a relative loss of strength, associated with pain and not a motor deficit.  (*Id*.).  Speed and drop arm testing both were negative, with no motor or sensory changes of the arm, and shoulder x-rays were unremarkable.  (*Id*.).  Dr. Vitols' impression was cuff tendonitis with

5

resultant impingement. (Tr. 131). Plaintiff received a pain block injection into her shoulder. (*Id.*).

Lumbar spine x-rays taken on May 3, 2005, revealed disc space narrowing at L5-S1. (Tr. 167). Plaintiff received a second pain block injection from Dr. Vitols on May 6, 2005. (Tr. 129). On May 9, 2005, Dr. Vitols reported that Plaintiff's left leg had given out, causing falls, and that she was using a cane. (Tr. 128). An MRI of the lumbar spine taken on May 18, 2005, showed mild facet arthropathy with no significant foraminal encroachment and no nerve root compromise. (Tr. 158). On June 2, 2005, Dr. Vitols reported that Plaintiff's shoulder pain persisted with no benefit from injections. (Tr. 157). A June 13, 2005, MRI of the left shoulder was normal. (Tr. 156).

Matt Kauffman, D.O., examined Plaintiff on June 16, 2005, for Dr. Vitols. (Tr. 155). On physical examination in a standing position, Plaintiff had markedly restricted motion, with pain limiting the examination. (*Id.*). Plaintiff could flex her trunk forward to touch her mid thigh, but had limited hyperextension secondary to pain. (*Id.*). She also had limited side bending and rotation secondary to pain. (*Id.*). Dr. Kauffman noted that Plaintiff did not appear to have significant paraspinal tenderness, but was tender mostly in her right spinal region, with some tenderness to the bilateral sacroiliac joints. (*Id.*). In a seated

6

position, Plaintiff had negative straight leg raise.  (*Id.*).  She had equal deep

tendon reflexes, +2/4 both patellar and Achilles reflexes, and +5/5 muscle

strength to the extensor hallus, the ankle dorsi flexors, and quadriceps and hip

flexors.  (*Id.*).  In a supine position, Plaintiff had pain with straight leg raising to

about 70 degrees, but had good hip range of motion.  (*Id.*).  She did have pain

with Faber test bilaterally.  (*Id.*).  Dr. Kauffman diagnosed chronic low back pain

with chronic bilateral sacroiliac joint pain.  (*Id.*).  Due to her symptomatology and

its length, he referred Plaintiff to another spine specialist for a second opinion.

(*Id.*).

Consulting neurosurgeon Scott West, D.O., examined Plaintiff on

September 23, 2005, and found that her lumbar motion and bilateral straight leg

raising were reduced, while reflexes and sensation in the lower extremities were

normal.  (Tr. 152).  Dr. West recommended continued conservative care.  (Tr.

153).

On November 28, 2005, Dr. Vitols noted that Plaintiff's shoulder pain

persisted and concluded that conservative treatment had failed.  (Tr. 150).  He

advised Plaintiff that he had little to offer orthopedically for her shoulder.  (*Id.*).

Pain management specialist John Moore, M.D., examined Plaintiff on

December 8, 2005.  (Tr. 180-83).  Plaintiff could heel-toe and toe walk, bilateral

straight leg raising was normal, and reflexes in the lower extremities were intact.
(Tr. 181).  Lumbar and left shoulder motion were decreased.  (*Id.*).  Dr. Moore
noted that Plaintiff experienced "giveaway falls" with both legs.  (Tr. 182).  He
recommended a focused strengthening program.  (*Id.*).

Eli N. Perencevich, D.O., reviewed Plaintiff's medical record on behalf of
the Ohio Bureau of Disability Determination in December 2005.  (Tr. 140-47).
According to Dr. Perencevich, Plaintiff could lift/carry 10 pounds frequently and
20 pounds occasionally, stand or walk six hours a day, and sit six hours a day.
(Tr. 141).  Plaintiff never could crawl or climb ladders, ropes or scaffolds, but she
occasionally could climb ramps and stairs, and stoop, kneel, crouch, and crawl.
(Tr. 142).  Plaintiff had to avoid concentrated exposure to extreme cold.  (Tr. 144).
Gary Hinzman, M.D., another state agency reviewing physician, affirmed Dr.
Perencevich's assessment in May 2006.  (Tr. 225).

On February 6, 2006, Dr. Moore reported that Plaintiff could heel-toe and
toe walk, bilateral straight leg raising was normal, and reflexes in the lower
extremities were intact.  (Tr. 235).  Lumbar and left shoulder range of motion was
decreased.  (*Id.*).  Dr. Moore administered a trigger point injection.  (Tr. 237).

Urologist Steven Dona, D.O., saw Plaintiff on February 15, 2006, because of
urinary incontinence.  (Tr. 218).  Plaintiff underwent a renal ultrasound, which

was normal.  (*Id.*).  On March 3, 2006, a cystoscopy showed no abnormal findings to account for Plaintiff's complaints.  (Tr. 215).  A uroflowmetry report on March 9, 2006, also was "essentially normal."  (Tr. 212).  A cystometrogram showed a small capacity bladder with evidence of an overactive bladder.  (Tr. 211).

On February 21, 2006, Dr. Moore completed a medical source statement as to Plaintiff's physical capacity, indicating that Plaintiff could not work an eight hour work day.  (Tr. 178-78A).

On November 29, 2006, Plaintiff was examined by John Urse, D.O., to obtain a second opinion evaluating her left shoulder problem.  (Tr. 274-75). Examination revealed marked pain with range of motion, particularly abduction and forward flexion; marked pain over her left acromioclavicular joint and with palpation over the anterior leading edge of her acromion; and detectable crepitus on abduction.  (Tr. 274).  Dr. Urse suspected acromioclavicular joint sprain relative to her left shoulder pain.  (Tr. 276).  Plaintiff received a AC injection. (*Id.*).

On January 30, 2007, due to suspected gastroesophageal reflux disease and altered bowel habits, Plaintiff underwent an esophagogastroduodenoscopy with a CLO test and biopsy of the gastric region and the distal esophagus, and a colonoscopy of the cecum with random biopsy of the descending colon.  (Tr. 297).

Plaintiff's postoperative diagnoses included possible Barrett's esophagus at 35 cm, biopsied; chronic gastritis; bile gastritis; and tortuous colon to the cecum. (*Id.*).

On February 2, 2007, Plaintiff underwent left shoulder arthroscopy with bursectomy and decompression, due to left shoulder impingement and acromioclavicular joint arthritis.  (Tr. 296).

On February 15, 2007, Troy Tyner, D.O., saw Plaintiff for follow-up regarding her reflux symptomatology.  (Tr. 306).  Dr. Tyner reported that protein pump inhibitors had caused Plaintiff to have diarrhea and were discontinued. (*Id.*).

Lance Tigyer, D.O., examined Plaintiff on March 1, 2007, for complaints of low back pain and bilateral posterior thigh pain.  (Tr. 308-09).  Plaintiff had a normal gait and could heel-toe walk.  (Tr. 308).  Lumbosacral spine motion was reduced, but hip motion was normal.  (*Id.*).  Lower extremity motion was full, strength was normal, and no sensory or reflex deficits were evident.  (Tr. 309). Lumbar spine x-rays showed mild degenerative changes and partial sacralization of the L5 vertebrae.  (*Id.*).  Dr. Tigyer recommended an MRI to determine Plaintiff's surgical candidacy.  (*Id.*).

10

Plaintiff treated at The Dayton Outpatient Center Pain Clinic from October 2007 to April 2008, for diagnoses of chronic low back pain, chronic myofascial pain syndrome, restless leg syndrome, and possible bilateral carpal tunnel syndrome of both hands. (Tr. 377-84).

Laila Gomaa, M.D., saw Plaintiff in June 2008. (Tr. 407-09). Plaintiff had a slow gait, but no sensory, reflex or motor deficits in the extremities. (Tr. 408). Bilateral straight leg raising was normal, but lumbar motion was reduced. (*Id.*). There was some spasm in the lumbar area. (*Id.*). Plaintiff stated that she took her prescribed medications with good pain relief, and increased her daily activities while taking her medications. (*Id.*). Dr. Gomaa opined that Plaintiff could not return to her previous job, but could lift up to 20 pounds with no repetitive lifting, have frequent changes in postural activities as needed, and do no overhead work. (Tr. 409).

Dr. Gomaa completed a work capacity form on August 20, 2008. (Tr. 410). According to Dr. Gomaa, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could sit six hours and walk, stand or lift two hours; could not climb; and could operate a motor vehicle for up to two hours. (*Id.*).

**Medical Expert Testimony**. Norris Dougherty, M.D., testified as the medical expert as the administrative hearing. (Tr. 484-98). Dr. Dougherty

11

testified that although Plaintiff alleged carpal tunnel syndrome, no EMG studies in the record confirmed that diagnosis. (Tr. 487, 490). Plaintiff also alleged fibromyalgia, but no bone scan appeared in the record and no rheumatologist discussed trigger points. (Tr. 487). Dr. Dougherty testified that all of Plaintiff's MRIs showed no significant findings regarding her persistent back pain. (Tr. 489). Her diagnoses have been lumbar strain, sacroiliac sprain, and "various things of that nature," but she complains of constant pain and pain with coughing or sneezing. (*Id.*). Dr. Dougherty testified that Plaintiff did not meet any of the listings because her symptoms were subjective and not supported by objective medical evidence. (*Id.*).

Dr. Dougherty testified that Plaintiff's reported stress incontinence and frequent bowel movements nonetheless would impact her employability. (Tr. 488-89, 494). Dr. Dougherty opined that Plaintiff would be restricted to sedentary work due to back pain and pain with coughing and sneezing, and she should not do heavy lifting. (Tr. 496).

## III.    THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

### A.    <u>Applicable Standards</u>

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The

definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See id*.  A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  (*See* Tr. 17-18); *see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set

13

forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B.    The ALJ's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2006, and had not engaged in substantial gainful activity since September 6, 2003.  (Tr. 18).

The ALJ found at Step 2 that Plaintiff has the severe impairment of lumbar strain.  (*Id.*).  The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4.  (*Id.*).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform light work with no overheard reaching, no twisting, no bending and no stooping.  (Tr. 19).  The ALJ further found that Plaintiff is unable to perform her past relevant work as an airline security agent and

14

baggage checker.  (Tr. 20).  Relying on the VE testimony, the ALJ further found that Plaintiff can perform a number of jobs that exist in representative numbers in the national economy.  (Tr. 21).  This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for SSI or DIB.  (*Id.*).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

15

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    <u>The Parties' Contentions</u>

Among Plaintiff's allegations of error is her contention that the ALJ erred at Step 2 of the sequential evaluation by failing "to even address Plaintiff's irritable bowel syndrome; urinary stress and urge incontinence; left shoulder impingement, cuff tendinitis and accompanying pain; fibromyalgia; bilateral carpal tunnel syndrome; and disabling pain." (Doc. # 8 at 11). According to the Commissioner, however, the issues in this case arise at Steps 4 and 5 of the

sequential analysis.  (Doc. # 10 at 8).  The Commissioner contends that the ALJ's nondisability finding is supported by substantial evidence.  (*Id.*).  The Commissioner further argues that the ALJ reasonably concluded that Plaintiff had the residual functional capacity to perform a range of light work.  (*Id.*).

**B.**   **Severe Impairments and Step 2 of the Sequential Analysis**

At Step two of his sequential analysis, the ALJ found only one "severe" impairment - lumbar strain.  The ALJ's conclusion that Plaintiff did not suffer from additional severe impairments is not supported by substantial evidence.  Step 2 of the sequential analysis – determining whether the claimant has a severe impairment – creates "a *de minimis* hurdle in the disability determination process . . ."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Under that *de minimis* view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.*  The purpose of this low evidentiary hurdle is to "screen out claims that are 'totally groundless.'"  *Id.* (quoting in part *Farris v. Sec' of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985)).  The Court in *Higgs* characterized the dismissal of a disability claim at Step 2 based on medical evidence alone as "exceptional."  *Id.* at 863.

This is not a case in which the claimant has alleged only one impairment. In such cases, an adverse determination at Step two causes the entire application to be "screened out" as "totally groundless." By contrast, Plaintiff in the present case alleges additional severe impairments, including irritable bowel syndrome; urinary stress and urge incontinence; left shoulder impingement, cuff tendinitis and accompanying pain; fibromyalgia; bilateral carpal tunnel syndrome; and disabling pain. (Doc. #8 at 11). Accordingly, despite the finding that only one of the alleged impairments was "severe," Plaintiff's claim survived Step two. *See*, e.g., *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In determining that Plaintiff did not have additional severe impairments, the ALJ appears to have placed great weight on Dr. Dougherty's opinion that Plaintiff's irritable bowel syndrome; urinary stress and urge incontinence; left shoulder impingement, cuff tendinitis and accompanying pain; fibromyalgia; bilateral carpal tunnel syndrome; and disabling pain are not severe impairments. (*See* Tr. 18-19). The ALJ's decision, however, contains no analysis of Dr. Dougherty's opinions under the various factors set forth in the Regulations. (*See id*). The Social Security Regulations require ALJs to evaluate every medical opinion of record, regardless of its source. *See* 20 C.F.R. § 416.927(d). As to non-treating medical sources – including medical experts, like Dr. Dougherty, who

testify during the administrative hearing – the ALJ must evaluate their medical

opinions under the same factors applicable to treating medical sources, *i.e.*,

supportability, consistency, specialization, *etc.* *See* 20 C.F.R. § 416.927(d), (f). The

Regulations appear to emphasize this requirement by reiterating it no less than

three times. *See* 20 C.F.R. § 416.927(d) ("we consider all of the following factors in

deciding the weight to give any medical opinion . . ."); *see also* 20 C.F.R. §

416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §

416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p,

1996 WL 374180, at *2 (same).

The ALJ erred by not explaining what regulatory factor led him to fully

credit Dr. Dougherty's opinions, particularly at Step 2, when finding that

Plaintiff's only severe impairment was a lumbar strain. (*See* Tr. 18). The ALJ

selectively cited to only a portion of the medical record, as follows:

> The claimant's medical records show that the claimant
> was injured while working for the U.S. Department of
> Labor and lifting [a] heavy suitcase. She was apparently
> one-month pregnant at the time. Due to her pregnancy,
> any diagnostic measures were not taken, and the
> claimant did not receive any medication. After she gave
> birth, the claimant underwent physical therapy,
> sacroiliac joint injections and a variety of pain
> medications. The claimant underwent an MRI of her
> lumbar spine on May 18, 2005, which showed mild facet
> arthropathy with no significant central or foraminal
> encroachment, and no nerve root compromise. On June

              15, 2006[,] another MRI of her lumbar spine showed no
              disc pathology or significant disc degenerative disease.

(Tr. 20) (citations to record omitted).

     In this case, the medical records disclose that Plaintiff has treated with

various physicians since her industrial accident of September 6, 2003, for multiple

symptoms that include weakness, sleep difficulties, persistent back pain, spasm,

marked restricted painful motion, tenderness, numbness, and atrophy.  (Tr. 128,

133-136, 155, 178-178A).  She also complained of urinary stress and urge

incontinence (Tr. 180-83, 164-65, 211, 215, 222), irritable bowel syndrome (Tr. 297,

336), fibromyalgia (Tr. 285, 336, 379), bilateral carpal tunnel syndrome (Tr. 180-

183, 379), and restless leg syndrome. (Tr. 248-50, 379).  In December 2005, after

conservative treatment had failed, Plaintiff was seen by a pain management

specialist, Dr. Moore, who, following an examination that decreased lumbar and

left shoulder range of motion among other symptoms, recommended a focused

strengthening program.  (Tr. 180-83).

     In determining Plaintiff's RFC, the ALJ gave Dr. Gomaa's assessment

"considerable weight."  (Tr. 20).  The ALJ found that Dr. Gomaa's assessment to

be supported by the objective evidence and not contradicted by any other

treating opinions.  (*Id*.).  As discussed *supra*, Dr. Gomaa completed a Work

Capacity Evaluation on August 20, 2008, opining that Plaintiff could lift 20

20

pounds occasionally and 10 pounds frequently; sit, walk, stand and operate a

motor vehicle for up to two hours; and could not climb.  (Tr. 410).  The ALJ

ignored treating physician Dr. Moore's opinion of February 21, 2006, indicating

that Plaintiff was restricted from working an eight hour work day.  (Tr. 178-78A).

The ALJ may not ignore evidence favorable to Plaintiff.  Rather, he must

articulate the evidence accepted or rejected when making a disability finding to

enable the reviewing court to engage in meaningful judicial review.  *See Hurst v.*

*Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985); *see also Bailey v.*

*Comm'r of Soc. Sec.*, 173 F.3d 428 [table], 1999 W.L. 96920 (6th Cir. 1999); *Morris v.*

*Sec'y of Health & Human Servs.*, 845 F.2d 326 [table], 1988 WL 34109 (6th Cir. 1988).

"[T]he ALJ must consider all the record evidence and cannot 'pick and choose'

only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d 378, 393 (5th

Cir. 2000) (citing in part *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984)).

When, as in this case, the ALJ fails even to mention apparently rejected evidence,

the Court is unable to determine if significant probative evidence was not

credited or simply ignored.

By overlooking or ignoring Dr. Moore's assessment and, in essence, the

bulk of the medical records that tend to support a conclusion that at least some of

Plaintiff's additional medical problems could constitute severe impairments, the ALJ erred at Step 2 of the sequential evaluation process.

## VI.    REMAND IS WARRANTED

Because the sequential analysis ceased at Step 2 as to Plaintiff's irritable bowel syndrome; urinary stress and urge incontinence; left shoulder impingement, cuff tendinitis and accompanying pain; fibromyalgia; bilateral carpal tunnel syndrome; and disabling pain, the ALJ's decision failed to resolve the degree to which those impairments affect Plaintiff's residual functional capacity or her ability to perform work.  Such factual determinations must be made by the Commissioner in the first instance.  Because additional findings of fact are required, the matter cannot be remanded for an award of benefits, but must be remanded for further proceedings.[3]

Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems articulated above.  On remand, the ALJ should be directed to (1) re-evaluate the combined impact of Plaintiff's severe and non-severe impairments on her work

---

[3]Because of this conclusion and the resulting need to remand this case for further administrative proceedings, an in-depth analysis of Plaintiff's remaining challenge to the ALJ's decision is unwarranted.

abilities, as required by the Commissioner's Regulations; (2) weigh the medical

source opinions, including those of Dr. Dougherty and Dr. Moore, under the

legal criteria required under the Regulations; and (3) determine anew, through

the sequential evaluation procedure, whether Plaintiff was under a disability and

thus eligible for DIB and SSI.

Accordingly, the case should be remanded to the Commissioner and the

ALJ for further proceedings consistent with this Report and Recommendations.

**IT THEREFORE IS RECOMMENDED THAT:**

1.     The Commissioner's final non-disability determination be
       VACATED;

2.     No finding be made as to whether Plaintiff Bobbi Steele-
       Malocu was under a "disability" within the meaning of the
       Social Security Act;

3.     This case be remanded to the Commissioner and the
       Administrative Law Judge under Sentence Four of 42 U.S.C.
       §405(g) for further consideration consistent with this Report;
       and

4.     The case be terminated on the docket of this Court.


September 27, 2010                          s/Sharon L. Ovington
                                         Sharon L. Ovington
                                    United States Magistrate Judge


23

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981).