**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BOBBI STEELE-MALOCU, | : | |
| Plaintiff, | : | Case No. 3:09cv00383 |
| vs. | : | District Judge Timothy S. Black<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff previously obtained a remand of this matter to the Social Security Administration for further proceedings. (Doc. #s 12, 14). The case is before the Court upon Plaintiff's Motion For Attorney Fees Pursuant To Equal Access To Justice Act (EAJA) (Doc. #16), the Commissioner's Response (Doc. #17), and the record as a whole. Plaintiff seeks an award of $1,943.75 in attorney fees plus $350 in costs (the filing fee she paid to begin this case) for a total EAJA award equaling $2,293.75.

The EAJA requires the Government to pay a prevailing social security plaintiff's attorney fees "unless the court finds that the position of the United States was

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

substantially justified or that special circumstances make an award unjust." 28 U.S.C. §2412(d)(1)(A); *see Pierce v. Underwood*, 487 U.S. 552, 556, 108 S.Ct. 2451 (1988); *see also Scarborough v. Principi*, 541 U.S. 401, 407, 124 S.Ct. 1856 (2004).

> A position is substantially justified when it is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541. Stated otherwise, a position is substantially justified when it has a "reasonable basis both in law and fact." *Id*. The fact that ... the Commissioner's position was unsupported by substantial evidence does not foreclose the possibility that the position was substantially justified. *See id*. at 569, 108 S.Ct. 2541; *Jankovich v. Bowen*, 868 F.2d 867, 870 (6th Cir. 1989). Indeed, "Congress did not ... want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case....' " *Scarborough*, 541 U.S. at [415], 124 S.Ct. at 1866 (quoting *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed.Cir. 2003)).

*Howard v. Barnhart* 376 F.3d 551, 554 (6th Cir. 2004). The Government bears the burden of establishing that its position was substantially justified. *Scarborough*, 541 U.S. at 414-15, 124 S.Ct. at 1865-66.

In the present case, the Commissioner contends that his litigation position was substantially justified for several reasons. First, at Step 2 of the sequential evaluation procedure, the Administrative Law Judge (ALJ) reasonably relied on the opinion of Dr. Dougherty, the medical expert who testified during the ALJ's hearing, because his opinion was supported by the medical evidence and was based on objective reports in the record. Second, although the Commissioner acknowledges that the ALJ incorrectly stated that Dr. Gomma's opinion was not contradicted and further acknowledges that the ALJ did not discuss the contrary opinion of Dr. Moore, Dr. Moore's opinion deserved no

2

discussion as it was "patently deficient." (Doc. #17 at 109-110). Third, the ALJ's decision did not employ an improper methodology, and even though he did not fully explain some of his findings, his failure to articulate that he considered some evidence does not require the conclusion that the Commissioner's litigation position was not substantially justified.

The ALJ's acceptance of Dr. Dougherty's opinion and his failure to weigh Dr. Moore's opinion were not reasonable because the ALJ failed to evaluate their opinions as required under the legal criteria required by Social Security Regulations. The Commissioner unreasonably overlooked this problem in his support of the ALJ's decision and in doing so likewise overlooked the improper methodology the ALJ employed. The prior explanation (in the Report and Recommendation) of the ALJ's several errors bears repeating and likewise establishes that the Commissioner's present search for substantial justification lacks merit:

> At Step two of his sequential analysis, the ALJ found only one "severe" impairment - lumbar strain. The ALJ's conclusion that Plaintiff did not suffer from additional severe impairments is not supported by substantial evidence. Step 2 of the sequential analysis – determining whether the claimant has a severe impairment – creates "a *de minimis* hurdle in the disability determination process . . ." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Under that *de minimis* view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* The purpose of this low evidentiary hurdle is to "screen out claims that are 'totally groundless.'" *Id.* (quoting in part *Farris v. Sec' of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985)). The Court in *Higgs* characterized the dismissal of a disability claim at Step 2 based on medical evidence alone as "exceptional." *Id.* at 863.

3

This is not a case in which the claimant has alleged only one impairment. In such cases, an adverse determination at Step two causes the entire application to be "screened out" as "totally groundless." By contrast, Plaintiff in the present case alleges additional severe impairments, including irritable bowel syndrome; urinary stress and urge incontinence; left shoulder impingement, cuff tendinitis and accompanying pain; fibromyalgia; bilateral carpal tunnel syndrome; and disabling pain. (Doc. #8 at 11). Accordingly, despite the finding that only one of the alleged impairments was "severe," Plaintiff's claim survived Step two. *See*, e.g., *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In determining that Plaintiff did not have additional severe impairments, the ALJ appears to have placed great weight on Dr. Dougherty's opinion that Plaintiff's irritable bowel syndrome; urinary stress and urge incontinence; left shoulder impingement, cuff tendinitis and accompanying pain; fibromyalgia; bilateral carpal tunnel syndrome; and disabling pain are not severe impairments. (*See* Tr. 18-19). The ALJ's decision, however, contains no analysis of Dr. Dougherty's opinions under the various factors set forth in the Regulations. (*See id*). The Social Security Regulations require ALJs to evaluate every medical opinion of record, regardless of its source. *See* 20 C.F.R. § 416.927(d). As to non-treating medical sources – including medical experts, like Dr. Dougherty, who testify during the administrative hearing – the ALJ must evaluate their medical opinions under the same factors applicable to treating medical sources, *i.e.*, supportability, consistency, specialization, *etc*. *See* 20 C.F.R. § 416.927(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. § 416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion . . ."); *see also* 20 C.F.R. § 416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. § 416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180, at *2 (same).

The ALJ erred by not explaining what regulatory factor led him to fully credit Dr. Dougherty's opinions, particularly at Step 2, when finding that Plaintiff's only severe impairment was a lumbar strain. (*See* Tr. 18). The ALJ selectively cited to only a portion of the medical record, as follows:

> The claimant's medical records show that the claimant was

4

> injured while working for the U.S. Department of Labor and lifting [a] heavy suitcase. She was apparently one-month pregnant at the time. Due to her pregnancy, any diagnostic measures were not taken, and the claimant did not receive any medication. After she gave birth, the claimant underwent physical therapy, sacroiliac joint injections and a variety of pain medications. The claimant underwent an MRI of her lumbar spine on May 18, 2005, which showed mild facet arthropathy with no significant central or foraminal encroachment, and no nerve root compromise. On June 15, 2006[,] another MRI of her lumbar spine showed no disc pathology or significant disc degenerative disease.

(Tr. 20) (citations to record omitted).

In this case, the medical records disclose that Plaintiff has treated with various physicians since her industrial accident of September 6, 2003, for multiple symptoms that include weakness, sleep difficulties, persistent back pain, spasm, marked restricted painful motion, tenderness, numbness, and atrophy. (Tr. 128, 133-136, 155, 178-178A). She also complained of urinary stress and urge incontinence (Tr. 180-83, 164-65, 211, 215, 222), irritable bowel syndrome (Tr. 297, 336), fibromyalgia (Tr. 285, 336, 379), bilateral carpal tunnel syndrome (Tr. 180-183, 379), and restless leg syndrome. (Tr. 248-50, 379). In December 2005, after conservative treatment had failed, Plaintiff was seen by a pain management specialist, Dr. Moore, who, following an examination that decreased lumbar and left shoulder range of motion among other symptoms, recommended a focused strengthening program. (Tr. 180-83).

In determining Plaintiff's RFC, the ALJ gave Dr. Gomaa's assessment "considerable weight." (Tr. 20). The ALJ found that Dr. Gomaa's assessment to be supported by the objective evidence and not contradicted by any other treating opinions. (*Id.*). As discussed *supra*, Dr. Gomaa completed a Work Capacity Evaluation on August 20, 2008, opining that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, walk, stand and operate a motor vehicle for up to two hours; and could not climb. (Tr. 410). The ALJ ignored treating physician Dr. Moore's opinion of February 21, 2006, indicating that Plaintiff was restricted from working an eight hour work day. (Tr. 178-78A).

The ALJ may not ignore evidence favorable to Plaintiff. Rather, he

5

> must articulate the evidence accepted or rejected when making a disability finding to enable the reviewing court to engage in meaningful judicial review. *See Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir. 1985); *see also Bailey v. Comm'r of Soc. Sec.,* 173 F.3d 428 [table], 1999 W.L. 96920 (6th Cir. 1999); *Morris v. Sec'y of Health & Human Servs.,* 845 F.2d 326 [table], 1988 WL 34109 (6th Cir. 1988). "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing in part *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984)). When, as in this case, the ALJ fails even to mention apparently rejected evidence, the Court is unable to determine if significant probative evidence was not credited or simply ignored.
>
> By overlooking or ignoring Dr. Moore's assessment and, in essence, the bulk of the medical records that tend to support a conclusion that at least some of Plaintiff's additional medical problems could constitute severe impairments, the ALJ erred at Step 2 of the sequential evaluation process.

(Doc. # 12 at 74-79).

The Commissioner's first and second contentions regarding substantial justification do not obviate the readily discernible errors of law discussed above and do not demonstrate the existence of a reasonable basis in law or fact for the Commissioner's litigation position. In support of his third contention that the ALJ's failure to fully articulate his reasoning must not be equated to a lack of substantial justification, the Commissioner relies on two cases: *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006) and *Stein v. Sullivan*, 966 F.2d 317, 319 (7th Cir. 1992). Each case expresses the same general concept: an ALJ's failure to properly articulate his or her reasoning "in no way necessitates a finding that the [Commissioner's] position was not substantially justified." *Stein*, 966 F.2d at 320; *see Cunningham*, 440 F.3d at 864. Yet neither case held that a failure to articulate combined with other errors – such as those described

above, *supra*, pp. 3-6 – can never support an EAJA award. The Commissioner's cases, therefore, do not support the conclusion that his decision to support the ALJ's decision, even though it was flawed with errors of articulation plus additional errors, was reasonably based in law and fact.

For these reasons, the Commissioner has not met his burden of establishing that his support for the ALJ's decision was substantially justified or that an EAJA award to Plaintiff will be unjust. *Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the administrative law judge's denial of benefits is without substantial justification.").

Accordingly, Plaintiff is entitled to an EAJA award in the amount she seeks.

The Commissioner asks the Court not to award EAJA fees directly to Plaintiff's counsel in light of *Ratliff v. Astrue*, __U.S.__, 130 S.Ct. 2521, 2524, 177 L.Ed.2d 91 (2010). In *Ratliff* the Supreme Court held: "a §2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." *Id*. at __, 130 S.Ct. at 2524; *see Bryant v. Commissioner of Soc. Sec.*, 578 F.3d 443, 447 (6th Cir. 2009)(same). In so holding, the Supreme Court recognized that historically the Commissioner paid EAJA fees directly to a prevailing plaintiff's attorney. *Ratliff* , __U.S. at __, 130 S.Ct. at 2528-29. The Court further noted that, based on the record before it, "the Government has since continued the direct payment practice only in cases where the plaintiff does not owe a debt to the

7

[G]overnment and assigns the right to receive the fees to the attorney." *Id*. __ U.S. at __, 130 S.Ct. at 2529 (internal quotation marks omitted).

In the present case, the record lacks evidence tending to show that Plaintiff in fact owes a pre-existing debt to the United States that might cause his EAJA award to be subject to an offset under *Ratliff*. The Commissioner, instead, explains that if EAJA fees are awarded, "the government will evaluate the propriety of directing payment to the attorney pursuant to an assignment." (Doc. #17 at 111). Because the Government effectively acknowledges that it does not know whether Plaintiff owes it a pre-existing debt, no ripe *Ratliff* issue exists. This conclusion is confirmed by *Ratliff* itself, where the government sought an EAJA offset based on its knowledge that the plaintiff owed it a debt that pre-dated the district court's approval of the EAJA award. __U.S. at __, 130 S.Ct. at 2424-25. In the present case, the Commissioner lacks such knowledge, and there is consequently no ground for the Commissioner to avoid or delay honoring Plaintiff's assignment of his EAJA fees to counsel. *Cf. id*. at __, 130 S.Ct. at 2530 ("the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract.")(Sotomayor, J., concurring).

Accordingly, Plaintiff's EAJA motion is well taken

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Motion For Attorney Fees Under Equal Access To Justice Act (Doc. #16) be GRANTED in the amount of $2,293.75;

2. The Clerk of Court be directed to enter Judgment in favor of Plaintiff and

        against the Commissioner of the Social Security Administration in the total amount of $2,293.75;

3.       The Commissioner be directed to pay Plaintiff's EAJA award directly to her counsel of record; and

4.       The case remain terminated on the docket of this Court.

April 1, 2011

                                                            s/Sharon L. Ovington
                                                                Sharon L. Ovington
                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).